<table>
<tr><td>94</td><td>519</td></tr>
<tr><td>s109</td><td>193</td></tr>
<tr><td>109</td><td>195</td></tr>
</table>

JOHN P. SANBORN v. WILLIAM T. MITCHELL, CIRCUIT JUDGE OF ST. CLAIR COUNTY.

<table>
<tr><td>94</td><td>519</td></tr>
<tr><td>117</td><td>21</td></tr>
</table>

94  519
f151 ¹113

*Probate courts—Special appeal—Discretion of circuit court—Mandamus.*

1. *Mandamus* will not lie to compel a circuit judge to vacate an order allowing an appeal to the circuit from an order of the probate court under How. Stat. § 6784, where the petition for leave to appeal sets forth facts sufficient to call for the exercise of the discretion of the circuit court, and such discretion has been exercised.

2. The appeal is not to be refused upon the denial of an interested party of the facts alleged in the petition for leave to appeal.

3. It is within the power and the duty of the circuit court to consider both the petition and the answer, and determine whether the petitioner is without default, and whether it appears that justice requires a revision of the case.

4. Where it appears from the petition that the account of an executor has been improvidently allowed, and that the property rights of wards have been injuriously affected, it would be a very exceptional case in which the court should not grant the leave to appeal.

5. The petition in this case (see opinion) is held sufficient to call for the exercise of the judgment of the circuit court upon the

questions whether the petitioners were without default, and whether justice required a revision of the case, and it will not be disturbed by *mandamus;* citing *Smith v. Circuit Judge,* 82 Mich. 93.

*Mandamus.* Argued January 4, 1893. Denied February 3, 1893.

Relator applied for *mandamus* to compel respondent to vacate an order allowing an appeal from probate court after the expiration of the statutory time therefor. The facts are stated in the opinion.

*N. E. Thomas, O'Brien J. Atkinson, Henry M. Duffield,* and *A. R. Avery,* for relator.

*Stevens & Merriam ( C. A. Kent,* of counsel), for respondent.

GRANT, J. One James W. Sanborn died in 1870, testate. By his last will his brother, the relator, John P. Sanborn, and Newell Avery were appointed executors and trustees. They jointly executed the trust until Avery's death, in March, 1877. After that time the relator continued to act as the sole trustee until his resignation, in 1891.

James W. Sanborn left surviving him his widow, Mehitable D., and three children,—Nancy, Frederick D., and William H.; the latter being an incompetent person. William H. became of age in April, 1889, and by the terms of the will the estate was then to be divided among the legatees. Nancy married William F. Botsford. She died before William H. became of age, leaving two infant children. Annual accounts were filed up to and including the year 1882. After that date the relator filed no account until 1891. When the time arrived for the distribution of the estate, the question arose whether, under the terms of the will, the children of Mrs. Botsford were entitled

to their mother's share of the estate.   A bill in chancery was filed to obtain a construction of the will.    Pending this bill, and in November, 1890, the legatees, being desirous to obtain possession of the property, and being willing to concede that the Botsford children were entitled to their mother's share, opened negotiations with the relator with a view of settlement with him, and the turning over of the property to the parties interested.   Meanwhile Mehitable D. Sanborn had been appointed guardian of her incompetent son, William, and William F. Botsford guardian of the infant children of Nancy.   These negotiations were consummated, and resulted in the execution of an agreement and bond.   The agreement was executed November 10, 1890, by Mehitable D. Sanborn, W. F. Botsford, and Frederick D. Sanborn, of the one part, and relator, John P. Sanborn, of the other part.   Mehitable and Mr. Botsford executed it as guardians of their respective wards. The material parts of this agreement are as follows:

" Whereas, the said John P. Sanborn has acted as executor and trustee under the will of James W. Sanborn, deceased, late of St. Clair county, Michigan, for many years past, during which period he has at all times kept all of the parties interested fully advised of the details of the estate, and of the current management thereof, and now desires to resign the trusteeship, and be discharged and relieved of all liability as executor and trustee under said will, and to have his bond canceled; and

" Whereas, the said parties of the first part are willing to take charge of the estate of said deceased, and to relieve said second party from all responsibility on account thereof:

" First.  The said John P. Sanborn, in consideration of the premises, and of the undertaking of the parties of the first part herein mentioned, agrees to file in the probate court, as soon as practicable, a general statement of his account as executor and trustee of said estate, and also a true statement of the assets of said estate now remaining in his hands.

" Second.  The parties of the first part jointly and severally agree that they will accept the said statement of ·

said account, and the said statement of assets, as true and correct, and will consent to, and assist in obtaining, the allowance of the said account by the probate court for the county of St. Clair, and, when said account has been allowed, will procure the appointment by said probate court of a successor to John P. Sanborn, as trustee of said estate, who will receipt to said Sanborn for the assets of said estate in Sanborn's hands; and thereupon the said first parties will consent to and insist upon the delivering of and cancellation of said Sanborn's bond as executor, and discharge of his sureties from all liability under said bond, and will release the said Sanborn from all liability and responsibility whatsoever on account of his said trusteeship and executorship; and said parties further agree that they will deliver, as hereinafter provided, a bond, a true copy whereof is hereto annexed, all of the stipulations and agreements of the obligors in said bond being made a part of this agreement, the same in all respects as though written out at length herein.

"*Third.* It is also mutually agreed that the said account and statement of assets shall be placed by said Sanborn in the hands of Fred L. Wells, of Port Huron, Michigan, in escrow, to be filed by him in the probate court, as hereinafter provided, as soon as examined by the first parties, and that the said bond shall be executed by the parties of the first part hereto, without date, and placed in the hands of C. F. Harrington, of Port Huron, in escrow, with authority to him to insert the proper date of the delivery thereof; and upon the filing by said Wells, in the probate court of St. Clair county, of the said account and statement of assets, said Harrington is immediately to deliver to said Wells, for said John P. Sanborn, the said bond, having first inserted the proper date therein, to wit, the day of the date of its delivery; the said party of the second part hereby agreeing that said account shall be prepared and placed in the hands of the said Wells within the next 60 days.

"*Fourth.* It is also mutually understood and agreed that, out of the assets now remaining in the hands of said executor and trustee, he is authorized to take out (1) all the legal expenses to which he has been subjected, and for which he has become liable, including counsel fees; and (2) the sum of $2,000, as and for his salary and compensation as such executor and trustee, still due him, in addition to the sum of $1,500 per annum."

In pursuance of this agreement the relator filed his account as executor and trustee February 9, 1891. The bond mentioned in the above agreement was duly executed, and bears date March 6, 1891. It was in accordance with the agreement, and recited that the relator—

" Has filed in the probate court for the county of St. Clair a general statement of his accounts as executor and trustee under said will, and a true statement of all assets of said estate now remaining in his possession, or in his control; and the said above obligors have examined the same, and are satisfied of the correctness thereof."

This account was allowed April 7, 1891, by the consent of the parties, and, as appears by the petition in this case, at the request of Frederick D. Sanborn, acting on his own behalf and on the behalf of the other parties interested, while the relator was absent from the State. June 9, 1891, the relator resigned his trust, and subsequently Frederick D. Sanborn was appointed executor and trustee in his stead. In August, 1891, relator turned over to his successor, Frederick D. Sanborn, certain assets in his hands, and claims that they constituted all the property of the estate. On October 7, 1891, Frederick D. Sanborn filed a petition in the probate court, setting forth, in substance, that the account rendered by John P. Sanborn was not correct, and that he had not filed a true account of the assets in his hands, and praying that he be cited to appear and render a full and complete account of said assets, and to furnish a detailed statement of his doings as executor, and that he surrender and deliver up all the personal property in his possession, and that he (Frederick) be authorized and empowered to bring suit upon the bond for such sums as should be found due from him to the estate, if he should fail to pay them over. No further action appears to have been taken upon this petition, and it is still pending.

Before relator's account was allowed, another agreement was made between the parties, in regard to an error which relator claimed to have been made in the account rendered in 1882. This item was for $11,623.96, claimed to have been erroneously entered on said account for interest. By this subsequent agreement, Mehitable, Frederick, and Mr. Botsford agreed to allow this item of interest, and the relator agreed to waive a claim of $4,273.54 shown by said account to be due him, and also the $2,000 mentioned in the first agreement. It was expressly stipulated in this agreement that it should in no manner interfere with or prejudice any of the rights of the parties under the original contract, dated November 10, 1890.

On January 25, 1892, Frederick D. and Mehitable D. Sanborn filed a petition in the circuit court for the county of St. Clair, on behalf of themselves and the wards, praying to be allowed to appeal from the allowance of relator's account, allowed April 7, 1891. After a hearing upon the petition, and answer thereto, the court allowed an appeal. The relator now prays for the writ of *mandamus* to compel the respondent to vacate the order allowing said appeal. The relator insists:

1. That the petition for an appeal makes no such showing as the statute requires in order to justify an appeal after the expiration of the time allowed by the statute.

2. That the agreement above given is conclusive upon the parties, and bars the right of appeal.

The statute provides that—

"If any person aggrieved by any act of the judge of probate shall, from any cause, without default on his part, have omitted to claim or prosecute his appeal according to law, the circuit court, if it shall appear that justice requires a revision of the case, may, on the petition of the party aggrieved, and upon such terms as it shall deem reasonable, allow an appeal to be taken and prosecuted with the same effect as if it had been done seasonably." How. Stat. § 6784.

If the petition for leave to appeal sets forth facts sufficient to call for the exercise of the discretion of the circuit court, and such discretion has been exercised, this Court will not interfere.

The petition in this case, for leave to appeal, is very lengthy, gives a detailed statement of the dealings of the executor and trustee, and makes certain charges, which it is unnecessary to state here. The truth of such charges should not be determined upon *ex parte* showing, but only upon evidence produced in open court, where the truth can be elicited by examination and cross-examination. We are, therefore, only concerned to determine whether the petition sets forth sufficient facts to give the court jurisdiction.

In order to show that the petitioners acted without default upon their part in not taking an appeal within the statutory time, they allege that the executor notified Frederick D. Sanborn that if he would appear at his office August 8, 1891, he would turn over to him the assets and papers of the estate; that Frederick D. Sanborn and William F. Botsford went to said office at the time specified, but that the executor did not appear, but that his attorney appeared and delivered to Frederick certain notes and mortgages, and stated that that was all of the assets which said Sanborn had to deliver at that time; that some days thereafter his said attorney sent to Frederick a mortgage, and a certificate issued in the year 1875 by W. L. Bancroft, as receiver of the Chicago & Lake Huron Railroad, payable to Henry Howard and John E. Miller for $5,500; that said certificate was worthless, and that there was nothing upon it to indicate that it belonged to, or was the property of, the estate; that petitioners did not know until August 8, 1891, that it was claimed by the executor that said certificate belonged to said estate, and that they had never before that date heard of the existence

of said certificate; that in the year 1880 said executor purchased for said estate $20,000 of bonds of a certain railway company; that in 1881 or 1882 he also purchased for said estate $20,000 of certain railroad car bonds; that he has failed to account for said bonds, or to turn them over to his successor; and that they—

"Were not aware, nor did they learn of the fact, that said railroad bonds and said railroad car bonds were not embraced in said statement of assets claimed to be in the hands of said Sanborn until the 60 days in which they might have appealed from the allowance of said account had expired."

It is unnecessary to mention any other items referred to in the petition. It is true that these allegations are denied by the executor in his answer to the petition for an appeal, and that he states therein that the petitioners were fully informed in regard to the assets of the estate and his doings as executor, and that the settlement was made with the full knowledge of all the facts. But the truth of these statements cannot be determined in this proceeding. The appeal is not to be denied upon the denial of an interested party of the facts alleged in the petition. If this were so, an appeal could very rarely be granted. It is within the power and duty of the court to whom the petition is addressed to consider both the petition and answer, and determine (1) whether the petitioner is without default; and (2) whether it appears that justice requires a revision of the case. The petition in this case sets forth sufficient to call for the exercise of this judgment on the part of the court, and therefore we cannot disturb it. *Smith v. Circuit Judge*, 82 Mich. 93.

The second question is more difficult of determination, in so far as it relates to the rights of the interested parties who were of age and competent. Were they the sole parties interested, a more careful examination of the

record and the rights of the parties would be required than we now feel called upon to give. So far as such parties are concerned, there is much force in the position advocated by the learned counsel for the relator, that their voluntary agreement is binding upon them. If they fully understood the situation, and the circumstances and facts as set forth by the relator, there is no good reason why they should not be bound by their agreement. If, however, the true situation was concealed from them, and they acted, in making such agreement, upon the representations of the executor that the account and statement of assets were true, while in fact they were false, such agreement, both by authority and in reason, would not be binding. Inasmuch as, under the view we take of the case, the writ of *mandamus* must be denied, we think it unnecessary to express a further opinion upon this branch of the case, but leave it to be determined upon the merits, as they shall appear at the trial.

But the rights of infants and an incompetent are involved in this controversy. They are wards of the courts, and it is the duty of courts to see that their rights are protected. Guardians cannot stipulate away the rights or property of their wards, without good and sufficient consideration; and, whenever it appears to the court that this has been done, any agreement accomplishing that result will be promptly set aside. As to these infants and the incompetent, it was the duty of the executor and trustee to file in the probate court an itemized account of his receipts and disbursements, and an accurate statement of the property in his hands, in which they were interested. The guardians of these wards were not justified in settling with the executor without such true account, and without obtaining for their wards, if possible, the entire property due them. We are not to be understood as holding that the account filed by the executor in this case is not suffi-

ciently specific.    That must be determined, in the first
instance, by the court which hears the case; and it must
determine whether a more specific account shall be
filed before proceeding with the case.    Where the property
of wards is interested, it is the duty of probate courts to
examine the account very carefully, and to see that their
rights are protected.    Such courts should not accept the
stipulations of parties without examination.    Whenever
it appears upon petition to the circuit court that
such account has been improvidently allowed, and
that the property rights of wards have been injuriously
affected, it would be a very exceptional case in which the
court should not grant the leave to appeal.    The law does
not, under those circumstances, visit the fault of the guard-
ian upon them.    They are without default, and are not
left to pursue their remedy against the guardian who may
be in default.

It follows that the writ must be denied, with costs.

The other Justices concurred.