*In re* SANBORN'S ESTATE.[1]

1. INFANTS—GUARDIAN AD LITEM.
　　Failure to appoint a guardian *ad litem* for infant legatees, on application made in their behalf to the circuit court for leave to appeal from an order of the probate court allowing the executor's account, is a mere irregularity, which may be cured by the appointment of such guardian in the circuit court after an appeal from its decision on the first-mentioned appeal.

2. APPEAL FROM PROBATE COURT—ACCOUNTING—FRAUD.
　　Whether an agreement whereby legatees consented to the allowance of an executor's account as presented to the probate court therefor was obtained by fraud cannot be properly litigated on an appeal to the circuit court from an order of the probate court allowing such account, but the question should be determined on an application for distribution of the estate.

[1] Rehearing (application of John P. Sanborn) denied July 8, 1896.

3. Wills—Executor as Trustee—Discharge.

Before an executor is entitled to a discharge from official re
sponsibility as such, on the ground that the fund coming
into his hands as executor has, pursuant to the terms of the
will, become converted into a trust fund, for which he is only
liable as trustee to account in a court of equity, he must show
some act done to change the character of his holding, and that
the fund is properly placed.

Error to Wayne; Hosmer, J.   Submitted January 16,
1896.   Decided May 12, 1896.

Mehitable D. Sanborn and another appealed from an
order of the probate court of St. Clair county allowing the
final account of John P. Sanborn, as executor of the estate
of James W. Sanborn, deceased.   From a judgment va-
cating the order and dismissing the appeal, all parties
bring error.   Reversed.

The following are the provisions of the will material to
this controversy:

"*Fifth.* My wife and children shall have their reason-
able support and maintenance, and my children their edu-
cation, until the youngest of my children shall arrive at
the age of 21 years, out of my estate.

"*Sixth.* When the youngest of my children shall arrive
at the age of 21 years, then all the rest, residue, and re-
mainder of my estate shall be divided into four shares, in
case my wife and three children are then living, and, if
all are not then living, then into so many shares as there
may be survivors of them, and each of them shall, during
the terms of their natural lives, have and receive the
interest on one of said shares; and in case of the death of
any of my children, they leaving children, then the
children last mentioned shall have and receive the share
upon which his or their father or mother was drawing the
interest, to have and to hold the same forever.   And,
upon the death of my wife, the share herein set apart for
her use shall be divided into so many parts as there are
children of mine then living, and the interest paid to such
children as aforesaid, and the principal paid to their heirs
as aforesaid.

"*Seventh.* I hereby nominate and appoint John P. Sanborn, of Port Huron, and Newell Avery, of Detroit, to be the executors and trustees of this, my last will and testament, hereby giving to them, and to the survivors of them, or, in case of the death of both of them prior to the full completion of this my last will, then to such person as may be duly appointed by the probate court of St. Clair county, full and complete authority to carry on my business as to them may seem best; to sell, dispose of, and convey any and all real estate owned by me; to carry on or settle and close up any and all partnerships in which I am engaged; to carry out and complete all contracts entered into by me. And I hereby direct and enjoin it upon them to pay the legacies aforesaid at such time after my decease as they reasonably can, except such as for the payment of which I have fixed a certain time; and I further enjoin it upon them to make such liberal allowances for the support of my wife and family, and the education of my children, as to them may seem best. And I hereby revoke all former wills by me made."

*H. W. Stevens* (*Elbridge F. Bacon*, of counsel), for Mehitable D. and Frederick D. Sanborn.

*P. H. Phillips*, for Elizabeth A. and Mabel S. Botsford.

*Henry M. Duffield* (*A. R. Avery* and *N. E. Thomas*, of counsel), for John P. Sanborn.

MONTGOMERY, J.   On the 7th day of April, 1891, the probate court for St. Clair county made an order allowing the final account of John P. Sanborn, surviving executor. By an order of the circuit court which was under review in *Sanborn* v. *Mitchell, Circuit Judge*, 94 Mich. 519, leave was given to the legatees named in the will to appeal from this order.   An appeal was taken by Mehitable D. Sanborn and Frederick D. Sanborn on their own behalf, and on behalf of William H. Sanborn, an incompetent person, and Elizabeth A. Botsford and Mabel Sanford Botsford, infants.   The case was transferred to the circuit court of Wayne county, and on the trial of the issue the circuit judge held that under the terms of the

109 MICH.—13.

will of James W. Sanborn, as to the transactions involved in the final account, John P. Sanborn was acting as a trustee, and not as executor, and was not bound to account to the probate court, and refused to enter upon a hearing of the account, and vacated and set aside the proceedings in the probate court allowing the account, for the reason that the accounting should be had in equity. Each party has sued out a writ of error.

John P. Sanborn contends that the infant Botsford children were not parties to the appeal, and that the appellants Mehitable D. Sanborn and Frederick D. Sanborn are bound by agreement that the account should be allowed, as it was, by the probate court, and that, therefore, the order should not be set aside on their appeal, but that the order of the circuit court should have been for a dismissal of the appeal. The legatees contend that the agreement by which they assented to the allowance of the account by the probate court was obtained by fraud, and that the allowance of the appeal from the probate court, made after a showing on this subject, together with the decision of this court in *Sanborn* v. *Mitchell*, refusing to disturb the order, concludes the parties, and that the minor children are before the court, though informally; and, on their own appeal, the legatees assert that under the will the powers conferred on John P. Sanborn were executorial, and that he was not a trustee, except as executor, and, furthermore, that if, under the terms of the will, it be held that certain of the duties which he may be or has been called upon to exercise are those of a trustee, yet until there has been an accounting in the probate court, in which he has charged himself as trustee, and has set apart the funds received by himself as executor to himself as trustee, the probate court has jurisdiction to call him to account.

1. Application for leave to appeal was made as well on behalf of the infants as on behalf of M. D. Sanborn and Frederick D. Sanborn, and the application is so

treated in *Sanborn* v. *Mitchell.* The failure to have a guardian *ad litem* appointed was an irregularity. The executor has not moved to dismiss the appeal as to them. A guardian *ad litem* has been appointed for the infants in this court, and we do not think their appeal should now be dismissed. The informality can still be cured by the appointment of a guardian *ad litem* in the circuit.

To remove any misapprehension which might arise from the language in a portion of the opinion in *Sanborn* v. *Mitchell,* it is proper to say that we do not think the question of whether there was fraud in inducing Mehitable D. Sanborn and Frederick D. Sanborn to consent to the allowance of the executor's account can be properly tried on the accounting in the circuit. This would lead to confusion. The questions on this accounting relate to the administration of the estate, the charges of the executor, etc. Whether these legatees are estopped can better be determined on an application for distribution of the estate.

2. No case has been presented in this court in which the question as to the duty of an executor named in a will containing such powers as those in the present will, to account to the probate court, has been directly passed upon. In *Cranson* v. *Wilsey,* 71 Mich. 356, the executor of a will containing similar provisions was sued at law on his bond, the bondsman being joined with him. In that case the will required the fund to be invested in real-estate securities, at 10 per cent. In the opinion of the court, by Mr. Justice CAMPBELL, it was said:

"If the property had been invested in real-estate securities, as required, the question might have arisen whether this was not equivalent to such a compliance with the order of distribution [which had been previously made by the probate court] as would have changed the nature of their holding. Upon this question we express no opinion. It is at least a doubtful proposition. But we think it is a dangerous and incorrect doctrine that executors can discharge themselves of their official responsibility

without doing some act to change the character of their holding, and place the fund safely where it ought to be."

It is unquestionably true that the same person may be named as executor in a will, and by the same instrument constituted a trustee. Whether these executors are constituted trustees, in such a sense that they might, upon a final accounting, discharge themselves from the obligation of their bond by showing a proper investment of the remaining assets in their hands, we need not determine. No such accounting has been had in this case, and the executor insists that it is not his duty to make one, although annual accounts were for years rendered to the probate court, in which no attempt was made to distinguish the trust funds, or show where or how invested, as distinguished from the general funds of the estate. Assuming that the will creates such a trust as is contended, we think that, before the executor can discharge himself of his official responsibility, he must do some act to change the character of his holding, and show that the fund is placed safely where it ought to be. This question has been considered by the courts of many of the States, and this duty is recognized in the better reasoned of the cases in which the question has been raised. *In re Hood's Estate,* 98 N. Y. 363; *In re Higgins' Estate,* 15 Mont. 474; *Hall* v. *Cushing,* 9 Pick. 395.

In *Hood* v. *Hood,* 85 N. Y. 561, the will bequeathed all the residue of the estate, real and personal, in trust to sell and dispose of said real estate, and collect and realize the personal estate, and, after paying certain incumbrances, to divide the balance into as many shares as there were children, and pay the income of each share to the wife of the deceased, if living, and, if not, to the legal guardian of the child to whom the share belonged, until the child should attain the age of 21 years, and, when the child should reach that age, to pay over the share set apart for him, with accumulations. By the twelfth clause of the will the wife and son of the testator were appointed

"executors and trustees," with power to sell or lease his real estate, in their discretion. In an action on the bond of one of the executors, for failing to invest the funds, and for converting portions of the same to his own use, it was contended that the funds misappropriated were in his hands as trustee, and not as executor. The court held that the proceeds of land sold were legal assets in the hands of the executor, for which he was *accountable* as such; citing and following *Stagg* v. *Jackson*, 1 N. Y. 206. The same case was again before the court of appeals in *Re Hood's Estate*, 98 N. Y. 363, where it was held that, whether or not, under the will, it was possible for the executor to exchange the character of executor for that of trustee, he had not done so; he not having credited himself, in his accounts as executor, with any sums turned over to himself as trustee. This ruling was again reaffirmed in *Re Hood's Estate*, 104 N. Y. 107. See, also, *Everson* v. *Pitney*, 40 N. J. Eq. 539; *Hall* v. *Cushing*, 9 Pick. 395.

The judgment will be reversed, and the case remanded to the circuit court, with direction to proceed to an accounting. Costs will be awarded against the executor.

The other Justices concurred.