Estate of Mabel Crawford.

## WILLS—EXECUTORS—TRUSTEES.

[Lucas Circuit Court, January 21, 1901.]

Haynes, Parker and Hull, JJ.

IN THE MATTER OF THE ESTATE OF MABEL CRAWFORD, DECEASED.

### 1. GENERAL RULE AS TO EXECUTORS AND SPECIAL TRUSTEES.

To constitute the person named in a will as executor a special trustee, separate and apart from his office of executor, it is not enough that the powers granted to him, or the duties imposed upon him in relation to a particular fund, be such as are usual in the course of ordinary administration; it must also appear that the intention was to withdraw the particular trust from the management and control of the executor as such, and to create a separate office for its management; and this must appear in the face of the presumption that every provision made in the will for the management of the estate, and every part thereof before it passes into the hands of the beneficiary, was intended as a direction to the executor in his official capacity.

### 2. GENERAL RULE AS TO ACTING IN BOTH CAPACITIES.

Where an executor is to be held as acting in both capacities, as executor and as trustee, it must plainly appear that such was the intention of the testator. The executorship itself is a trust, and every provision in the will regarding the management of the assets, before they pass out of the executor's hands, into those of the beneficiaries, will *prima facie* be held as coming within that trust; and the contrary intention must be made plainly to appear. As a general rule, the duties of the executor as such, are co-extensive with the provisions of the will; and it is only in cases of unmistakable intention, or of inherent necessity, that a separate character will be assigned to him.

### 8. RULE WHERE IT IS DIFFICULT TO DETERMINE CHARACTER OF THE TRUST.

Where the provisions of a will are so close to the border line that separates the office of trustee from that of the executor that it is difficult to determine to which class the office belongs, the general rule, above stated, resolves the question in favor of the view that the duty, or trust, devolves upon the executor or the trustee as executor, by virtue of his office as executor.

### 4. GENERAL RULE SUBJECT TO QUALIFICATIONS.

The general rule that where there is a devise or bequest to an executor in trust, the executor receives the property or fund at once as trustee, and the same never becomes assets, is subject to the qualifications, first, that if needed as assets the title of executor is superior to that of trustee, so that the former may take, use and account for the same as assets; and, second, if the property is not reduced to the form or condition in which it is to be distributed as trust property, the duty of thus transforming it may devolve upon and be exercised by the executor as such; and this will be the case unless the will distinctly provides that this duty shall devolve upon the trustee as such. In such cases, the same person being both executor and trustee, he will not take in the latter capacity until he has fully discharged his duties in the former capacity, and not until the fund or property has been distinctly set apart as trust property.

### 5. RULES APPLIED IN FAVOR OF EXECUTORSHIP.

Under a will, devising an estate consisting of both real and personal property, which, after directing payment of debts and funeral expenses, makes bequests of personal effects to relatives and friends, and certain sums of money to executors in trust, and then devises, "all my real and personal property of every kind and nature, save as specifically devised, to said above named executors, in trust for the execution of my will," with full power of sale, etc., in which case the property could not be at once applied to the purposes named in the will, the title which such executors take devolves upon them as executors, and their relations to the estate as trustees do not arise until the estate has been reduced to money and everything has been brought to a pass where nothing remains but to distribute and invest the funds as provided by the will.

Lucas Circuit Court.

6. **LETTERS OF ADMINISTRATION NECESSARY IN SUCH CASES.**

Under the will in question the executors may proceed to sell the property, real and personal, without any special order or license of any court other than that contained in ordinary letters of administration, but the titles and powers being vested by virtue of executorship, they must take out letters of administration.

7. **LETTERS WHEN ADMINISTRATION NOT NECESSARY—NOT VOID.**

Though it may not be strictly necessary and though its propriety or expediency may be doubtful or open to criticism, yet if authorized, the action of the court in granting letters of administration cannot be regarded as void or erroneous.

8. **FULL CREDIT TO JUDGMENTS IN OTHER STATES.**

Under Sec. 1, Art. 4, of the constitution of the United States, requiring that full faith and credit be given in each state to the public acts and judicial proceedings of every other state, the courts of Ohio are bound to recognize the judgments of the courts of Michigan upon the accounts of executors where such courts have jurisdiction in the premises, as conclusive upon matters involved therein, and as foreclosing any collateral inquiry into the same matters.

9. **EXECUTORS REPORTS OF DOMICILIARY AND ANCILLARY ADMINISTRATION.**

Where an executor has accounted, as he may be required to do, for so much of the estate as was located in another state, under ancillary administration there, the requirements of a general accounting in the court of domiciliary or principal administration, is fully met by reporting to such court the fact of the accounting in the court of such other state, together with the judgment of the proper court of such state approving the accounts, and by accounting to the domiciliary court for the balance due to the estate according to the judgment of the court of the state of ancillary jurisdiction.

10. **STATEMENT UPON ERRONEOUS ASSUMPTION OF LAW.**

A statement made by an executor in an application for letters of ancillary administration in Michigan, that an appeal had been taken from the order of probate in Ohio, which resulted in a delay in the appointment of himself and his colleague, based upon an erroneous assumption as to the effect of the laws of Ohio upon an appeal from such an order, where it does not appear to have been made knowingly or wilfully, does not constitute a false statement or one which will render the appointment invalid.

11. **ERROR—EXCEPTIONS BY ONE PARTY AVAILABLE BY ANOTHER.**

Exceptions by one party to the disallowance of exceptions to the accounts of an administrator in the probate and common pleas courts, are available in behalf of other parties who, in common pleas court, are allowed to come in and are recognized as excepting to such accounts. Such parties have, therefore, a right to prosecute error through such exceptions.

12. **ERROR—EXCEPTIONS TO EXECUTORS ACCOUNTS—IN REM.**

Proceedings in error upon disallowance of exceptions to accounts of executors, are not, as a rule, *in personam*, but *in rem*, and, if regular, are binding upon all persons equally, whether they are personally present to take part in the controversy, or hold themselves aloof; and this rule applies to judgments in an ancillary administration in another state as well as to judgments in the domiciliary administration in Ohio.

13. **INVALID OBJECTION TO ALLOWING SUCH PROCEEDINGS.**

Under the foregoing rules, an objection to allowing persons who first became parties to a proceeding in error to the disallowance of exceptions to the accounts of an administrator in the court of common pleas to prosecute error in the circuit court upon exceptions by other parties in the lower courts, on the ground that the original parties were parties to a contest of such accounts in an ancillary administration in another state, and that the parties who came in subsequently were not, and that judgments which would be *res judicata* as to original parties would not be so as to the others, is not tenable or valid; and particularly where the objections urged are upon the ground that the courts were without jurisdiction in the ancillary administration, which, if true, would render the judgment void as to all parties.

HEARD ON ERROR.

*Rhoades & Rhoades* and *Geo. W. Radford*, for plaintiffs in error.

*Charles G. Wilson, Esq.*, and *E. F. Bacon*, for defendant in error.

PARKER, J.

Error to the judgment of the court of common pleas disallowing certain exceptions to the account of William R. Stafford, as executor.

In this litigation two cases have been consolidated, viz., Nos. 1412 and 1426. In the early part of 1891, Mabel Crawford died, leaving a will by which she made numerous bequests and by which she appointed Clay Crawford, of Toledo, Ohio, and William R. Stafford, of Port Hope, Michigan, executors.

On May 22, 1891, this will was admitted to probate in Lucas county, Ohio, and on the same day, on the application of Clay Crawford, letters testamentary were issued to said Crawford and Stafford by the probate court of Lucas county. No bond was required or given.

On June 19, 1891, a petition was filed in the court of common pleas of said Lucas county, attacking the validity of this will. This contest lasted until the January term, 1893, of that court when the validity of said will was finally established.

The great bulk of this estate was situated in Huron county, Michigan, and consisted mostly of real estate. After this will contest was commenced, and on July 8, 1891, William R. Stafford was duly appointed special administrator of this estate by the probate court of Huron county, Michigan, and qualified and acted as such special administrator until after the validity of said will was established in Lucas county, Ohio.

The statutes of Michigan provide for special administration in certain cases. One of the questions here is, whether this was a case coming within the purview of the Michigan statutes on the subject.

After the validity of said will was established, it was allowed, filed and recorded in the probate court of Huron county, Michigan, and on May 17, 1893, letters of administration were issued to said William R. Stafford by the probate court of Huron county. He had already been granted special letters of administration, but at this time he was made administrator with the will annexed, a general administrator. These letters were in the usual form, and among other things, required said Stafford to render a just and true account of his administration to said court, etc. He afterwards gave a bond in the sum of $5,000.

On December 27, 1892, said Stafford filed a partial account of his doings as said special administrator in the probate court of Huron county, Michigan.

On August 4, 1896, said Stafford filed in the probate court of Huron county, Michigan, his final account as special administrator of said estate.

On August 4, 1896, said Stafford filed his first account as executor, or administrator with the will annexed, of said estate in the probate court of Huron county.

To all of these accounts exceptions were filed by Clay Crawford as executor, which exceptions stated that said Crawford represented himself and also the Protestant's Orphan's Home of Toledo, Ohio. These exceptions were heard in the probate court of Huron county, Michigan, and partially sustained. Both Crawford and Stafford appealed the whole

matter to the circuit court for said county of Huron. These accounts and exceptions were heard by said circuit court at its March term, 1897, and said circuit court overruled said exceptions and fully approved and sustained said accounts.

Said Crawford took the case to the Supreme Court of Michigan, which court, at its October term, 1898, affirmed the findings and judgment of the circuit court of Huron county, but the report of the case, in 118 Mich., p. —, shows that this was not on the merits, but because of certain omissions from the record, that is, certain defect in the steps taken by the appellant, whereby the case was not properly before the court on the merits. Mr. Stafford had very little to do with the estate situate in Ohio, Mr. Crawford attending to that branch of the administration.

On October 28, 1896, the probate court of Lucas county, Ohio, notified said Stafford, executor, to file his account as such executor, in that court.

On November 10, 1896, in pursuance of said notice, Stafford filed in the probate court of said Lucas county, a report of the proceedings of the probate court of Huron county, Michigan, whereby he was appointed special administrator of said estate, and also of the issuing of letters testamentary to him by said probate court of Huron county after the allowance, filing and recording of said will of said Huron county; and also reported therewith a full and complete copy of the several accounts that he had filed in said probate court of Huron county; and also therein stated that exceptions had been filed to said accounts and that the matter was then pending and undisposed of in the circuit court for said Huron county, Michigan.

It thus appearing to the probate court of Lucas county that these accounts of said Crawford were pending and unsettled in the courts of Michigan, it was ordered by that court, on January 12, 1897, that the hearing as to the same be continued until the further order of the court, which seems to have been intended to mean until the Michigan courts had passed upon said accounts.

After these accounts had been fully sustained by the courts of Michigan, the Protestant's Orphan's Home of Toledo, Ohio, a legatee under the will of said Mabel Crawford, filed its exceptions in the probate court of Lucas county, Ohio, to each and all the items contained in the copies of the accounts filed in Huron county, Michigan, as reported for the information of the probate court of Lucas county, Ohio, by said Stafford as above set forth.

Upon the hearing in the probate court of Lucas county, Ohio, that court held that said Stafford as executor under the Ohio appointment, was liable to account to it for the sum of $29,835.51, being in full of the proceeds of the Michigan property, real and personal, without deduction of any credits, that had come into the hands of Stafford and had been accounted for by him as special administrator and as administrator with the will annexed, to the courts of Michigan.

This property had never been in Lucas county, or in the state of Ohio, and, according to the accounts of Stafford, approved by the courts of Michigan, the proceeds thereof had all been expended and paid out by said Stafford in the administration of his trust in Michigan. On the appeal of Stafford to the court of common pleas of Lucas county, Ohio, that court disallowed the exceptions of plaintiffs in error to so much of the report as applied to the assets of the Michigan property, and to so

much as had been approved by the courts of Michigan. On account of this action of the court of common pleas this proceeding in error is prosecuted here.

By the action of the court of common pleas of Lucas county, the American Missionary Association of New York City, New York, the American Board of Commissioners for Foreign Missions, of Boston, Massachusetts, and the Washington Street Congregational Church of Toledo, Ohio, were allowed to come in and be made parties and recognized as excepting to the accounts through the Protestant's Orphan's Home of Toledo, Ohio; so that proceedings in error are prosecuted here, not only on behalf of the Protestant's Orphan's Home of Toledo, Ohio, but on behalf of the other institutions named, all joining as plaintiffs in error.

The question whether the plaintiffs in error, through the Protestant's Orphan's Home, have a right to prosecute error here, though exceptions in the probate court and in the court of common pleas, were in the name of the Protestant's Orphan's Home only, has already been passed upon by this court in favor of said plaintiffs in error. On the hearing of that matter it was urged that this order might operate to the disadvantage of the defendant in error, because the Protestant's Orphan's Home, according to the record, appeared and contested the accounts in the Michigan courts, while the other plaintiffs in error did not, so that a judgment of the Michigan courts, it was thought, might be interposed under the plea of *res judicata* to the objections urged here by the Protestant's Orphan's Home, while the same may not be true as to the other plaintiffs in error. I will remark upon that, in addition to what was said in passing upon that question, that we do not regard this action of the court as having the effect apprehended by the defendant in error. Proceedings of the character here involved are not as a rule *in personam* but *in rem*, and if regular, they are binding upon all persons equally, whether they appear personally to take part in the controversies, or proceedings, or hold themselves aloof.

Besides, the objections urged here to the proceedings in and judgments of the courts of Michigan, are urged upon the ground that those courts were without jurisdiction over the subject matter, and if that is true such proceedings and judgments must be held to be null and void when attacked by parties who appeared as well as if attacked by those who did not appear.

That the courts of Michigan were without jurisdiction in the premises, is urged upon various grounds. In the first place it is said that even if ancillary administration in Michigan would have been authorized and proper under the conditions obtaining as to the location of the property, if the deceased had died intestate, or if she had not conferred upon the executors an estate and power different from and greater than that properly pertaining to the office of executor, it was unauthorized in this case because the title to the property in Michigan is by the will vested in Crawford and Stafford as trustees; and it is urged that as such trustees they were authorized to take possession of, sell and otherwise dispose of and deal with the Michigan property without probating the will in that state; without filing there a certified copy of the same and of the probate granted here; without taking out any letters as special administrators or as administrators with the will annexed; and that for the reason that the trust is of a character cognizable in the chancery courts only in that state, the probate courts there had no jurisdiction

over this trust, and that as a consequence, the taking out of letters as special administrators and the taking out of letters as administrators with the will annexed, was wrongful and unauthorized, and the orders and judgments of the court approving of the items of expenditure and credit in the accounts of Stafford, acting in those capacities are null and void and should be disregarded and he should be required to account *de novo* to the probate court of Lucas county, Ohio, for all the Michigan property, and should submit to that court the items of credit claimed, and abide by its findings and judgments thereon; and this not because such property is assets of the estate for which he should account as executor, but because it is a part of a trust fund for which he is accountable as testamentary trustee to the probate court of Lucas county, Ohio, which court, under our statutes, has jurisdiction of such trusts.

This claim makes it necessary for us to consider the provisions of the will and certain authorities bearing upon the question. It is, doubtless, true that a trust may be created by will and title vested in the executor as a trustee, and the duties with respect thereto imposed upon such trustee may be of a character making it unnecessary for the trustee to take out letters as executor in order to dispose of and deal fully with the property in the discharge of the trust; and it might be of a form and character that, according to the laws of Michigan, would bring all questions pertaining to the administration of the trust within the jurisdiction of the chancery courts of that state, and make it unnecessary and perhaps improper to go into the probate court of that state for any purpose.

I will call attention to certain general rules upon the subject which may serve to guide us in determining whether or not the will in question here is of that character. In Williams on Executors, at page 723, appears the following:

"Besides the interest which an executor or administrator in all cases takes in the whole personal estate of the testator or intestate, he may in some instances be seized of real property of the deceased as trustee or be *ex officio* invested with a power to dispose of it. It has been the subject of some discussion in what cases executors take a fee simple, in trust to sell, under a will, or are invested merely with a power of disposition. The distinction resulting from the authorities appears to be this: That a devise of the land to executors to sell passes the interest to it, but a devise that executors shall sell the land, or that lands shall be sold by the executors, gives them but a power. An eminent writer has concluded from an examination of all the cases, that even a devise of land to be sold by the executor, without giving the estate to them, will invest them with power only, and not give them an interest."

In many cases the provisions in question are so close to the border line that separates the office of trustee from that of executor, that it is difficult to determine to which class the office belongs, but in cases of doubt or ambiguity there is a general rule which is applicable to resolve the question in favor of the view that the duty or trust devolves upon the executor, or upon the trustee as executor, by virtue of his office of **executor**. This is very well stated in the case of Matthews, Admr., v. Meek, 23 Ohio St., 272: I read from the opinion of Judge McIlvaine, at page 289:

"It is undoubtedly true that a testator may, by his will, create a special trust as to a particular fund, over which the executor is not authorized or required to exercise his official control or management. But as a general rule, the powers of the executor are coextensive with the trusts created by the will. The office of executor is only that of a trustee, and the whole will is looked to for the purpose of ascertaining the nature and extent of the trusts created thereby, and the powers of the executor in relation thereto; and while the executor is engaged in administering any and all the trusts created by the will, it must be presumed that he is acting in the capacity of executor alone, unless it plainly appears that such was not the intention. To constitute the person named in the will as executor a special trustee, separate and apart from his office of executor, it is not enough that the powers granted to him, or the duties imposed upon him in relation to a particular fund, be such as are usual in the course of ordinary administration; it must also appear that the intention was to withdraw the particular trust from the management and control of the executor as such, and to create a separate office for its management; and this must appear in the face of the presumption that every provision made in the will for the management of the estate, and every part thereof before it passes into the hands of the beneficiary, was intended as a direction to the executor in his official character."

I read also a paragraph from Gandolfo v. Waller, 15 Ohio St., 251, from the opinion of Welch, J., he says:

"I admit that a testator may direct the continuance of a trade or business by his executor, as trustee, independent of his executorship; and such cases often occur. But they are always either where there is a devise or bequest to the executor in trust, or where part of the assets are specifically set apart, and directed to be invested as a trust fund. In the former case the executor receives them at once as trustee, and they never become assets. In the latter, they are received by him as executor, and remain assets of the estate till so set apart and invested. But the setting apart must be distinct, complete and final. It must separate the fund from the assets of the estate, and from the control of the executor as such, as perfectly as the payment of a legacy separates it from the estate, and casts the burden of managing and controlling it upon the legatee in trust. And where the executor is to be held as acting in both capacities it must plainly appear that such was the intention of the testator. The executorship itself is a trust, and every provision in the will regarding the management of the assets, before they pass out of the executor's hands into those of the beneficiaries, will *prima facie* be held as coming within that trust; and the contrary intention must be made plainly to appear. As a general rule, the duties of the executor as such, are coextensive with the provisions of the will; and it is only in cases of unmistakable intention, or of inherent necessity, that a separate character will be assigned to him."

A great many cases bearing upon this matter have, through the learning and industry of counsel upon both sides, been brought to our attention and we have examined them. It will be impossible, however, within the reasonable compass of an opinion in this case to undertake to review them and I shall not attempt to do so. The following authorities seem to us to clearly and fully sustain the construction which we put upon this will, which is that the duty of administration devolved upon the executors *virtute officii*. Wall v. Bissell, 125 U. S,. 382; Colt

v. Colt, 111 U. S., 566; McArthur v. Scott, 5 O. F. D., 357; Newcome v. Williams, 9 Metc., 525; Drury v. Inhabitants of Nantic, 10 Allen, 169; Crocker v. Dillon, 133 Mass., 91; In re Higgins Estate, 39 Pac. Rep'r, 506, 15 Mont., 474; In re Estate of Hood, 98 N. Y., 363; Everson v. Pitney, 40 N. J. Eq., 539.

The general rule stated in Gandolfo v. Walker, *supra*, that where there is a devise or bequest to an executor in trust, the executor receives the property or fund at once as trustee, and the same never becomes assets, must be subject, we think, to the qualifications, first, that if needed as assets the title of the executor is superior to that of the trustee, so that the former may take, use and account for the same as assets; and, second, if the property is not reduced to the form or condition in which it is to be distributed as trust property, the duty of thus transforming it may devolve upon and be exercised by the executor as such, and that this will be the case unless the will distinctly provides that this duty shall devolve upon the trustee as such.

In such cases, the same person being both executor and trustee, he will not take in the latter capacity until he has fully discharged his duties in the former capacity, and not until the fund or property has been distinctly set apart as trust property.

I call attention to one other case entitled In re Sanborn's Estate, 109 Mich., 191. The court here held that by the will in question there was created a trust devolving upon the executor as such; also that if he had proceeded and set the trust fund apart distinctly, he might then have been held chargeable with it as a trustee under the will, and the court further held, which is important to the consideration of the case at bar, that until he had set the fund aside so that it became distinctly a trust fund to be held and managed by him as trustee and not as executor, he was accountable for its administration to the probate court of Michigan, and that until then it was not a matter within the jurisdiction of the chancery courts of that state.

The case of Ford v. Ford, 80 Mich., 42, is urged upon our attention by counsel for plaintiff in error, and it is contended by them that it is authority not only for the proposition that Stafford, with respect to this Michigan property, was acting as a trustee and could not exonerate himself from his obligation as trustee by undertaking to account to the probate court as executor; but in support of the other proposition which they advance, that it was not necessary to probate the will in Michigan or to file a certified copy of the probate that had been made in this state; or, if it were necessary or proper to go that far with respect to the matter, that it was not necessary or proper for Mr. Stafford to take out letters as said executor or as administrator with the will annexed or to account as executor.

We have examined this case carefully and are of the opinion that it does not sustain the propositions in support of which it is cited. It was a proceeding in the chancery court of Michigan merely to obtain a construction of a will. We do not understand that it was in the course of the administration of the estate any further than that, and it seems to us to have been a proceeding of the character that is authorized in this state, going into court to obtain a construction of a will, and that when the court proceeds to say that it would only be necessary for the executor and trustee in that case to do certain things and that he might at once bring the property to sale, the court is not there speaking, as we understand it, with reference to the legal steps that might be necessary

under the statute in order to invest him with authority to thus proceed; it is only determining his power under the will after he has taken proper legal steps.

As the decedent left no debts, if the contention of the plaintiff in error is well founded, it follows that it was not necessary for Crawford or Stafford named in the will as executors, to take out letters either in Ohio or Michigan to fully administer upon this estate, unless perhaps to attend to the charges incident to the burial of deceased, and some charges that may have arisen from her last sickness. Bearing in mind that a part of the property in Michigan was personalty and a part was realty, let us consider certain provisions of the will.

The will reads:

"I, Mabel Crawford, of Toledo, Ohio, do make, publish and declare this to be my last will and testament; and I hereby revoke all previous wills by me made.

" Item I.   I direct that all my just debts and funeral expenses be fully paid.   I wish to be buried in or near Toledo, on some lot to be selected and purchased by my executors, and that a monument, to cost not over five hundred (500) dollars be erected thereon."

It will be noted that throughout this will the persons who are afterwards named as executors are uniformly designated as " executors," and by this item 1 it is apparent that certain duties devolved upon them as executors that are not matters of trust at all, of paying debts and buying a burial lot and monument.

" Item II.   I give and bequeath to my aunt, Sarah G. Crawford, of Toledo, Ohio, and to her heirs, my piano and all my books, paintings, works of art, silver ware, watches, jewelry, clothing and household property, I may own at the time of my death."

" Item III.   I give and bequeath to my uncle, Clay Crawford, and his wife, Sarah G. Crawford, or to the survivor of them, the sum of five thousand (5,000) dollars to be paid them by my executors as provided below—subject to this condition, viz: If I outlive both said Clay and Sarah, and there be no child of theirs living at the time of my death, then said $5,000 shall revert and be added to and divided between the bequests specified in items numbered four (4), five (5) and eight (8) herein, each bequest in said three items to receive its proportional share thereof.

" Item IV.   I give and bequeath to William R. Stafford of Port Hope, Michigan, and to his heirs, the sum of two thousand five hundred (2,500) dollars."

It will be observed that items two, three and four contain bequests of money and personal effects, the title to which would not devolve upon the legatees until the probate of the will and administration of the estate. That we think is true according to the law of Ohio and according to the law of Michigan as well. In a sense, the title is derived from or through the executors, who take and hold the property under the will subject to the claims of creditors, costs of administration, reduction of the property to the condition in which it is to be when distributed, the distribution thereof, etc. When this is all accomplished, but not before, the title of the legatees which originated in the will, is perfect.

" Item V.   I give and bequeath to my executors the sum of ten thousand five hundred (10,500) dollars in trust for the five (5) purposes following, to-wit:

" First—To pay to the person who at the time of payment shall act as treasurer of the American Missionary Association of New York City, New York, the sum of two thousand (2,000) dollars to be used and applied under the direction of the executive committee of that association, to its charitable uses and purposes."

The other paragraphs of the above item are of like character and provide for the payment of certain sums to the Methodist Episcopal Church at Cassville, Michigan, to the treasurer of the Washington Street Congregational Church of Toledo; the treasurer of the American Board of Commissioners for Foreign Missions, and to the treasurer of the Protestant's Orphan's Home of Toledo, Ohio.

" Item VI.   I give and bequeath to my executors the sum of five thousand (5,000) dollars in trust as follows, viz: They to keep said sum carefully invested in good securities, and annually pay all the interest thereof (less taxes and costs and expenses of investing said sum) to my mother, Amanda Yale, during the balance of her natural life; and after her death said $5,000 to be equally divided between the children born to her since she married Eugene Yale, this bequest to the children of Amanda and Eugene Yale to be subject to the two conditions following, " etc.

Item VII is also a bequest in substantially the same form.

Item VIII starts out:   " I give and bequeath to my executors the sum of five thousand (5,000) dollars, in trust for the following purposes, viz.," and then the purposes are set forth.   The terms of Items five, six, seven and eight are " I give and bequeath to my executors," in each instance certain sums of money in trust, which they are to pay to certain persons, institutions and objects.

Now it appears that the estate did not consist of moneys which the executors could at once take and hold and apply to the designated persons and objects, but it consisted in real and personal property, in Ohio, Michigan and elsewhere, which must be reduced to funds to be thus available.   Thus far, therefore, it seems clear to us that something must be done with this estate before it could be brought to that condition, and that kind of property which may be and is to be treated as trust funds.   In this respect the conditions are like those obtaining in Gandolfo v. Walker, 15 Ohio St., 251, and in *In re* Sanborn's Estate, 67 N. W. Rep., 128; 109 Mich., 191, *supra*.

· The tenth item of the will (passing by the ninth for a moment) clears up and emphasizes this condition of the estate and these duties devolving upon the executors as such.   It reads:

" Item X.   After said executors have converted the property herein conveyed to them into money, and after they have paid the costs and expenses of the administration hereof and the debts as provided in item one (1) herein, and after they have put at interest the full amount of the two funds specified in items six and eight herein—and after paying as provided in item seven (7) herein—then out of the entire balance remaining I desire the bequests mentioned in items three (3) four (4) and five (5) herein, to be fully paid.   *   *   *"

Then there is further provision as to what shall be done in the event that there shall be a deficiency or a surplus, as to how the loss or gain shall be distributed among the beneficiaries.

Now, does item nine change all this? We think not.  We think the title which Stafford and Crawford took under item nine and the power with which they were thereby invested devolved upon them as execu-

Estate of Mabel Crawford.

tors and that their relations to the estate as trustees did not and could not arise until the estate had been reduced to money and everything had been brought to a pass where nothing remained but to distribute or invest the funds as provided by the will. Item nine reads:

" Item IX. I hereby nominate and appoint said William R. Stafford and Clay Crawford executors of this my last will and testament; and I hereby give, devise and bequeath all my real and personal property of every kind and nature (save and except as specified in item two herein), to said above named executors, in trust for the execution of my will, with power and full authority to sell and dispose of the same at public or private sale at such times, [within three (3) years after the date of my death], and upon such terms and in such parts as to them shall seem best, and I hereby authorize said executors or either of them, who shall qualify, to sell as above or lease or mortgage any part of my property, if in their opinion it is advisable so to do, and to execute and deliver any instruments or writings necessary or proper to carry into effect any powers granted in this will, and to sell and convey any or all my real estate in fee simple, without being required to obtain any orders of court therefor ; and with full power to settle, compromise, arbitrate or adjust any claim due either to or from my estate on such terms as they may deem best. I request that no bond be required of said executors or either of them."

That they might proceed, by virtue of the titles and powers vested in them by the will, to sell the property, real and personal, without any special order or license of any court other than that contained in ordinary letters of administration, we think is clear, but that these titles and powers were vested in them in virtue of their executorship, and that, therefore, they must take out letters of administration, we think is equally clear.

I may add that in a case of doubt, where another court of competent jurisdiction, though of another state, has put this construction upon the will, and has required or permitted the executors as such to account to it, and the proceedings and judgments are not attacked on the ground of fraud, we would be loth to treat all that has been done as a nullity, and would not do so unless we were fully convinced that the case required such action. In other words all doubts should be resolved in favor of the propriety, regularity and legality of the proceedings and judgments of the courts, though of sister states. Many cases have been brought to our attention through the industry of counsel, where the provisions of the wills in question were in many respects similar to those of the will under consideration here, in which it has been held by courts of last resort of different states that such wills vested the title to the property in the devisee or legatee as trustee, so that it never became a part of the assets to be administered by him or another as executor, but in those cases the ultimate question was whether a person taking title from such devisee or legatee without the intervention of an executor, took a good title, or whether sureties of such person in his office as executor should respond for his delinquencies as trustee, etc.; and in all cases the question seems to have been so resolved as to attain the ends of justice, but we have been cited to no case in which one who at certain stages of his administration, or with respect to certain property, must act as executor, and at a later stage, or with respect to certain other property, must act as trustee, and who has accounted fully as executor for that which devolved upon him in both capacities, and has had his administration

approved by a court of general probate jurisdiction, and yet whose accounting and judgments have all been brought to naught, all overturned and set aside on the mere ground that the court erred in proceeding too far, in requiring him to account too fully; and we think that an extremely strong case must be presented to induce or justify such action at the hands of another court. What might be accomplished in a proceeding in equity, to bring the trustee to account for said fund, if fraud were charged, even though he may have obtained the sanction of a court to his acts as a part of his scheme of fraud, we are not called upon to consider. A large part of the estate seems to have melted away and come to almost nothing in the hands of this executor, and there seems to have been very large sums paid as expense incident to his administration, but into these matters we cannot and are not asked to inquire. The sole question here is whether the judgments of the probate court of Huron county, Michigan, affirmed by the circuit court and again by the Supreme Court of that state, relieve the executor from obligation to render an account of his stewardship to the probate court of Lucas county, Ohio, with respect to that part of the estate which was all along in the state of Michigan?

There are other objections to the conclusiveness of the judgments of the courts of Michigan, to be noted.

It is urged that even though this executor was authorized to act in the capacity of executor in dealing with the Michigan property, he might so act without probating the will or taking out letters as special administrator, or as administrator with the will annexed in or accounting to the probate court of that state, and that the action of Stafford in thus proceeding was unauthorized and should be ignored here. That that court had no jurisdiction in the premises, and that the judgment of the Michigan courts upon his accounts is null and void.

It is also said that in his application, upon which he was appointed special administrator, he made a false statement of a material matter, As to this latter claim I call attention to the provisions of Sec. 5851. Howard's Annotated Statutes of Michigan, under which he made application and was appointed such administrator.

Section 5851 reads as follows:

"When there shall be a delay in the granting of letters testamentary or of administration, occasioned by an appeal from the allowance or disallowance of a will, or from any other cause, the judge of probate may appoint an administrator to act in collecting and taking charge of the estate of the deceased, until the question of the allowance of the will, or such other question as shall occasion the delay, shall be terminated, and an executor or administrator be thereupon appointed; and no appeal shall be allowed from the appointment of such special administrator."

It appears that in his application he stated that there had been an appeal from the order of probate entered by the probate court of Lucas county, Ohio, and that the appeal resulted in a delay in the appointment of himself and his colleague as executors and in their exercise of their office, and it appears that that would have been true if the same proceeding had taken place in Michigan, or under their statute, upon an appeal of that sort, as the judgment of probate is suspended and the appointment of an executor, if any appointment has been made, is suspended, and everything is held *in statu quo* pending the settlement if the question of the validity of the will, but a special administration is authorized, to preserve the property. And it is said that when Stafford in his application stated that there was delay in

Estate of Mabel Crawford.

obtaining letters of administration or letters as executor because of the proceedings in the courts of Ohio questioning or contesting the validity of the will, that he made a statement that was materially false; that the action in which the validity of the will was challenged did not delay the appointment of executors in Ohio; that they might have proceeded to administer upon the estate in Michigan or take charge of the property in Michigan as such executors.

It is not made to appear that even if this was an incorrect statement upon the part of Mr. Stafford, it was made wilfully or knowingly; that is to say, there is a fair presumption that he and his attorneys there assumed and believed that the law of the state of Ohio upon this subject was the same as that in the state of Michigan. But we think that this statute applied to the case and operated upon the condition existing with reference to the property in Michigan; that with reference to that property, the statement might have been truthfully made, that there was a delay in the matter of obtaining general administration or authority to act as general administrators upon that property; we think it is quite apparent that the courts there would not have admitted this will to probate and would not have issued any letters upon it when advised of the pendency of proceedings in the courts of this state contesting its validity; and yet the necessity existed for the preservation of the property in Michigan and he might have truthfully said that that situation resulted in a delay in the granting of general letters testamentary with respect to the part of the estate then in the state of Michigan.

Now was the probate and granting of letters unauthorized? Such action, though it may not be strictly necessary, and though its propriety or expediency may be doubtful or open to criticism, yet if authorized, cannot be regarded as void or even erroneous. I will read briefly from the statutes of Michigan upon the subject.

" Section 5805. Sec. 21. All wills which shall have been duly proved and allowed in any other of the United States, or in any foreign country or state, according to the laws of such state or country, may be allowed, filed and recorded in the probate court of any county in which the testator shall have real and personal estate on which such will may operate, n the manner mentioned in the following sections:

" Section 5806. Sec. 22. When a copy of such will, and the pro bate thereof, duly authenticated, shall be produced by the executor or other person interested in such will, to the probate court, such court shall appoint a time and place of hearing, and notice shall be given in the same manner as in the case of an original will presented for probate.

Section 5807. Sec. 23. If, on hearing the case, it shall appear to the court that the instrument ought to be allowed in this state, as the last will and testament of the deceased, the copy shall be filed and recorded, and the will shall have the same force and effect as if it had been originally proved and allowed in the same court.

" Section 5808. Sec. 24. When any will shall be allowed, as mentioned in the preceding section, the probate court shall grant letters testamentary, or letters of administration with the will annexed; and such letters testamentary or letters of administration shall extend to all the estate of the testator in this state; and such estate, after payment of his just debts and expenses of administration, shall be disposed of according to such will, so far as such will may operate upon it; and the residue shall be disposed of as is provided by law in cases of estates in

this state belonging to persons who are inhabitants of any other state or country."

It will be noted that the condition upon which the statute operates is the existence of real and personal property upon which the will may take effect. That condition existed here. The existence or non-existence of debts seems to be immaterial, so far as the admitting of the will to probate and the granting of letters of administration are concerned.

Under Sec. 5808 and other sections, it is held in Dickinson v. Seaver, **44** Mich., 624, 629: "Whatever may be done with the *final balance*, where the testator's will has been previously probated at his domicile, the estate must be administered, up to the time of distribution, under the state probate laws." Now it was competent for the state of Michigan to pass and enforce this legislation. The general doctrine upon the subject is stated in a great many cases that have been cited to us. I call attention to an extract from Story on Conflict of Laws, pages 876–7–8:

" It is exceedingly clear that the probate grant of letters testamentary or of administration, in one country gives authority to collect assets of the testator or intestate only in that country, and do not extend to the collection of assets in foreign countries; for that would be to assume an extra territorial jurisdiction or authority, and to usurp the functions of the foreign local tribunals in these matters. It is no answer to the objection to say that the effects of the testator or the intestate are assets wherever they are situated, whether at home or abroad; and that such effects as are in a foreign country at the time of the death of a testator or intestate, although they remain and are wholly administered there by the executor, are equally assets. Doubtless this is true; but the question is not, whether they are assets or not, but who is clothed with the authority to administer them; and this must be decided by the local jurisdiction where they are situated, for the original administration has no extra territorial administration."

I think the last word of the extract quoted should be "jurisdiction." See also Wills v. Cowper, 2 Ohio, 124, 128. This language by Sherman, J., delivering the opinion of the court.

" But the very appointment, as well as the power of an administrator over the estate of a decedent, emanates from the laws of the country where he receives his appointment. The extent of his authority, and the manner in which it shall be exercised, depend upon legislative enactments, and is confined to the jurisdiction of the country granting the administration. Doe v. McFarland, 9 Cranch, 151. An administrator as such, cannot intermeddle with the effects of his intestate in another state, unless permitted to do so by the laws of that state; otherwise it would be in the power of one state to regulate the distribution of property situated in another. And the rule is the same, whether the administration be general or with the will annexed. In either case the authority of the administrator emanates from the law, and cannot extend beyond the jurisdiction of the power conferring the authority; and the will being annexed to the grant of administration, does not change the tenure by which the administrator holds his office."

Dickinson v. Seaver, 44 Mich., 624; Mower's Appeal, 48 Mich., 441; Reynolds v. McMullen, 55 Mich., 568; McIntyre v. Conrad, 93 Mich., 526; Kerr v. Moon, 9 Wheat. (U. S.), 565; McCormick v. Sullivan, 10 Wheat. (U. S.), 192; Armstrong v. Lear, 12 Wheat. (25 U. S.), 169; Cabanne v. Skinker, 56 Mo., 357.

Estate of Mabel Crawford.

Our attention is called by counsel for plaintiffs in error to Secs. 6057–6061, Howard's Statutes of Michigan, and it is said that the executor should have proceeded under these sections. Section 6057 provides:

"When an executor or administrator shall be appointed in any other state, or in any foreign country, on the estate of any person dying out of this state, and no executor or administrator thereon shall be appointed in this state, the foreign executor or administrator may file an authenticated copy of his appointment in the probate court of any county in which there may be any real estate of the deceased."

The next section provides that such executor or administrator may be licensed to sell real estate for the payment of debts and legacies. The next section is with respect to the bond required, and it is urged that that provides that the accounting in such cases is to be to the court of the decedent's domicile or the place of principal administration, but it does not say so, as I read it. It reads:

"If an authenticated copy of such bond shall not be filed as mentioned in the preceding section, such foreign executor or administrator, before making such sale, shall give bond with sufficient sureties to the judge of probate, with condition to account for and dispose of the proceeds of such sale for the payment of the debts or legacies of the deceased, and the charges of administration, according to the law of the state or country in which he was appointed."

Which we understand to mean that the provisions of the will and the provisions of the law as to the distribution of the estate in the country where the original bond was made, shall be given effect, but it does not provide where the accounting shall be, although the following section indicates that the accounting is to be in the courts of Michigan. It reads:

"When such foreign executor or administrator is licensed to sell more than is necessary for the payment of debts, legacies and charges of administration, as before provided for in this chapter, he shall, before making the sale, give bond with sufficient sureties to the judge of probate, with condition to account to him for all the proceeds of the sale that shall remain after payment of said debts, legacies and charges, and to dispose of the same according to law."

Now it is urged on behalf of plaintiffs in error, that if any action was required on the part of any Michigan court, in this instance, no more was required and no more was proper or legal than that provided for in these sections; and it is said that under these sections no accounting is  quired or authorized in the courts of Michigan, and that Reynolds v. McMullen, *supra*, supports this contention.

Section 6057 applies only where there has not been an executor or administrator appointed in Michigan upon the estate there of a person dying elsewhere. In this case there had been a Michigan administrator appointed in pursuance of the other provisions of the statute, so that Sec. 6057 did not apply to this case. The administrator had been appointed in pursuance of Secs. 5805 to 5808 inclusive and Sec. 6057 is not antagonistic to those sections, but is in harmony therewith and it, as well as the case of Reynolds v. McMullin, *supra*, recognizes the legality, if not the necessity of appointing an administrator in certain cases under Secs. 5805 to 5808. If there is personal property as well as real estate, which was the case here, administration is necessary and then the accounting goes on as held in Dickinson v. Seaver, *supra*, to final distribution. The remark in Reynolds v. McMullin, *supra*, at page 576,

the effect that in case of ancillary administration, that would proceed like any other up to the time of accounting, we do not construe as over-ruling what was expressly held, as above stated, in the case of Dickinson v. Seaver, *supra*; it does not go so far as to say that the accounting must be in the domicile of the deceased.

The case of Battelle v. Parks, 2 Mich., 531, is cited in support of the contention that it was not even necessary to take out letters of adminis-tration and that it was not necessary to probate the will. It is sufficient to say that it was not necessary for the court to hold anything of that kind in the case. It involved a domestic will which had been probated and under which letters of administration had been taken out. There is a remark of the court in the course of the opinion that would seem to imply that opinion, but it is *obiter dicta*, and we doubt if that was meant or intended, in view of the express provisions of the statutes of Michi-gan upon the subject.

The executor having accounted for so much of the estate as was located in Michigan, how far can he be required to go in the way of accounting for the same property to the probate court of Lucas county, Ohio? The great weight of authority, in our judgment, sustains the proposition that the court having jurisdiction of the ancillary administra-tion may require an accounting to be made in Michigan to the extent held in Dickinson v. Seaver, *supra*, and that the requirements of the rule laid down in some of the cases, that there must also be a general accounting in the court of domicile, or of principal administration, is fully met by reporting to such court the fact of the accounting in the court of another state for the assets in such state, together with the judgment of the proper court of such state approving the accounts, and by accounting to the domiciliary court for the balance due to the estate according to the judgment of the court of the state of ancillary jurisdiction.

All this seems to have been done here, and we hold that under the provisions of Sec. 1, Art. 4 of the constitution of the United States, requiring that full faith and credit shall be given in each state to the public acts and judicial proceedings of every other state, we are bound to recognize the judgments of the courts of Michigan upon the accounts of the executor set forth in this record as conclusive upon the matters involved therein, and as foreclosing any inquiry into the same matters, when attacked collaterally in the manner here attempted.

Other questions presented as to the correctness of these accounts involving questions of error rather than want of jurisdiction of the sub-ject matter are not open to inquiry here in this proceeding. Finding no error therein, the judgment of the court of common pleas will be affirmed.